

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-16-2004

# Lumaj v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2854

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lumaj v. Atty Gen USA" (2004). *2004 Decisions.* Paper 70.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/70

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-2854

_____

NIKE LUMAJ,
                    Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(BIA No. A75-452-022)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 26, 2004
Before:  SCIRICA, *Chief Judge*, FISHER and BECKER, *Circuit Judges*

(Filed:  December 16, 2004)

_____

OPINION OF THE COURT

_____

SCIRICA, *Chief Judge*.

    Petitioner Nike Lumaj seeks review of the Board of Immigration Appeals'

decision affirming without opinion the decision of the Immigration Judge to deny his

application for political asylum and withholding of removal. We have jurisdiction to review the Board's order under 8 U.S.C. § 1252. We will affirm.

## I. Background

Nike Lumaj is a native and citizen of Albania who grew up in northern Albania near the Yugoslavian border. For most of his life, Lumaj lived with his parents and four siblings, all of whom are Catholic. Lumaj maintains that his family's problems originated in 1945, twenty-two years before he was born, as a result of his grandfather's opposition to the post-World War II communist occupation of Albania. As a result of his political activity, communist authorities arrested Lumaj's grandfather several times and expropriated most of his real property.

In 1980, Lumaj, with his parents and siblings, attempted to flee Albania on foot, but the family was apprehended at the Yugoslavian border. His father was sentenced to twelve years in prison for trying to escape the country. Authorities likewise sentenced Lumaj, his mother, and siblings to an internment camp where they worked from 1980-1985 in an agricultural cooperative. Upon their release, Lumaj, his mother and siblings returned to the family home, which in the interim had been vandalized by members of the communist regime. For the next two years, Lumaj worked (voluntarily) in an agricultural cooperative until the Army drafted him to fulfill his compulsory service obligation.

After two years, Lumaj satisfied his military obligation, received a discharge, and began working construction jobs. In 1993, when the communist regime fell, Lumaj and

2

his family joined the Association of Formerly Politically Persecuted Persons in an attempt to regain possession of the real property taken from Lumaj's grandfather and to organize renovations of St. Nicholas Church, a Catholic church located in their village. Despite the fall of communism, many villagers who remained sympathetic to the former regime threatened those who attempted to repair St. Nicholas.

In January 1997, Lumaj stopped working and began making preparations to leave Albania. In April 1997, he acquired an Albanian passport. A short time later, he collected $7,000, apparently from friends, in order to purchase a counterfeit passport and an airplane ticket to the United States. Lumaj attempted to enter the United States with his counterfeit passport, but was detained at the airport by immigration officials. During an airport interview in which he was assisted by a translator, Lumaj claimed he sought entry to escape the on-going war in Albania, that he had no political affiliations, and that he feared returning to Albania because he had borrowed money he could not pay back.

In May 1997, the Immigration and Naturalization Service (INS)[1] served Lumaj with a notice to appear for removal proceedings. INS alleged that Lumaj, who is not a United States citizen or national, entered the United States without proper documentation and gained entry by "fraud or willfully misrepresenting a material fact" in violation of 8 U.S.C. § 1182 (a)(6)(C)(i), and further intended to gain admission as an immigrant

---

[1]Beginning on March 1, 2003, INS became a part of the Department of Homeland Security pursuant to *Homeland Security Act of 2002*, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).

without proper documentation in violation of 8 U.S.C. § (a)(7)(A)(i)(I). Lumaj petitioned for asylum and withholding of removal. After a hearing, the Immigration Judge (IJ) denied the application on both counts. Lumaj filed a timely appeal, and the Board of Immigration Appeals (BIA) affirmed without opinion

.

## II.

Although we generally review orders of the BIA, we also review immigration judge orders where the BIA affirms without opinion. *See Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). We review factual findings, including credibility determinations, under a substantial evidence standard. *See* 8 U.S.C. § 1252 (b)(4)(B) (codifying *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)); *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). Findings of past and future persecution are likewise subject to substantial evidence review. *Gao v. Ashcroft*, 299 F. 3d 266, 272 (3d Cir. 2002).

Under the substantial evidence standard, findings are upheld if a reasonable fact finder could reach a similar conclusion based on the record. We will reverse only if the IJ's findings are unsupported by the record or are based on mere conjecture. *Id.* The IJ is entitled to rely on record evidence of conditions in the applicant's home country, which may be illustrated by State Department reports and reports from non-governmental organizations. *Id.* at 278-79; *Dia*, 353 F.3d. at 249; *Chang v. INS,* 119 F.3d 1055, 1064 (3d Cir. 1997) (discussing non-governmental reports).

4

**III.**

Here, the Immigration Judge credited Lumaj's testimony regarding his family's experiences from World War II until 1990. But the IJ did not credit Lumaj's account of the events surrounding his departure from Albania and entry into the United States. Particularly, the IJ discredited Lumaj's explanation of why he sought asylum in the United States, and of how he raised $7,000 for false travel documents and airfare. The IJ cited discrepancies between Lumaj's airport statement and his asylum application, and considered evidence from the State Department and other sources detailing the conditions in Albania. Considering the evidence as a whole, the Immigration Judge concluded Lumaj's account of his departure from Albania and entry into the United States lacked credibility.

The adverse credibility finding is supported by material inconsistencies in the record. The IJ found discrepancies between Lumaj's initial answers given at the airport to an immigration officer and later responses on his asylum application. Although airport interviews are not necessarily "valid grounds upon which to base a finding that an applicant is not credible," *see Dia*, 353 F.3d at 257 (citation omitted), here the finding of adverse credibility rests on Lumaj's own testimony, offered with the assistance of an interpreter, regarding the circumstances surrounding his departure from Albania. In sum, the record supports a finding of adverse credibility.

5

The Immigration Judge also concluded Lumaj fails to qualify as a refugee for asylum purposes. *See* 8 U.S.C. § 1158(b)(1). A refugee is an alien who cannot return to his or her country of origin "because of persecution or a well-founded fear of persecution based on race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101 (a)(42)(a). To establish refugee status, an applicant must demonstrate a genuine and reasonable fear of persecution in the native country. *Gao,* 299 F.3d at 272. The test is both subjective and objective. *Lukwago v. Ashcroft*, 329 F.3d 157, 176-77 (3d Cir. 2003). Whether an applicant demonstrates past persecution or a well-founded fear of future persecution is a factual determination. *Id.*

We have established that persecution is an "extreme concept that does not include every sort of treatment our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001) (citations omitted).

Here, the Immigration Judge found Lumaj did not reasonably fear persecution upon returning to Albania. Relying on reports from the State Department and non-governmental organizations, the IJ emphasized the changed country conditions after the fall of the communist regime and found little evidence of current religious or political persecution in Albania. Buttressing this conclusion, a Department of State opinion letter

6

states that any adversity Lumaj may face upon returning to Albania is more a result of general instability and poverty rather than targeted religious or political persecution. The IJ also noted that northern Albania, Lumaj's home region, is predominantly Catholic, rendering religious persecution less likely.

The IJ further found that neither Lumaj's military work assignments nor his brother's injuries establish a well-founded fear of future persecution. While violence against a family member may "support for a claim of persecution and in some instances is sufficient to establish [a well-founded fear of] persecution," *Baballah v. Ashcroft*, 335 F.3d 981, 988 (9th Cir. 2003), the IJ reasoned that the facts here, where Lumaj admits he does not know exactly what happened to his brother, do not meet this threshold. Likewise, the IJ found that any past persecution suffered by Lumaj or his family, while reprehensible, did not in light of the fundamental change in country conditions give rise to a well-founded fear of future persecution. *See Lukwago*, 329 F.3d at 173-74 (citing 8 C.F.R. § 208.13(b)(1) for proposition that a showing of past persecution is rebuttable by a showing of changed country conditions). Finally, the IJ found that the more recent incident involving Lumaj's family home did not constitute persecution. Accordingly, the IJ determined that Lumaj did not establish a well-founded fear of future persecution.

The Immigration Judge's order based on adverse credibility and persecution findings is supported by the record. The IJ did not err in determining that changed

7

country conditions undermine Lumaj's claim of fear of future persecution. *Lukwago,* 329 F.3d at 174.

## V.

Lumaj also challenges the BIA's decision to affirm the immigration judge without opinion. We resolved this issue in *Dia*, where we held that "nothing in the INA specifically requires the BIA to explain its decisions." 353 F.3d at 236 (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 555 (3d Cir. 2001)). Additionally, we stated that "[n]either the Constitution nor Congress guarantees a *de novo* review by the BIA, nor do they guarantee a right to a fully reasoned opinion by the BIA." *Id.* at 243 (citation omitted).

## VI. Conclusion

For the foregoing reasons, we will affirm the order of the BIA.